UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION

PATRICIA DARBY,

          Plaintiff,

v.                              CASE NO.  8:08-CV-2421-T-17MAP

MEDCO HEALTH SOLUTIONS
OF NETPARK, LLC,

          Defendant.

_____/


                            ORDER

     This cause is before the Court on:


          Dkt. 15 Motion for Summary Judgment,
                  With Exhibits
          Dkt. 16 Deposition
          Dkt. 19 Response
          Dkt. 24 Reply

     The Complaint in this case includes Count I, violation of
Family Medical Leave Act, in which Plaintiff Patricia Darby
alleges that Defendant Medco Health Solutions of Netpark, LLC
("Medco") denied Plaintiff a leave of absence for a serious
health condition and terminated Plaintiff's employment, in
violation of 29 U.S.C. Sec. 2615.  Plaintiff Darby seeks a
judgment for Plaintiff Darby's lost wages, earnings and
employment benefits, prejudgment interest and reasonable
attorney's fees and costs, and seeks a mandatory injunction
directing Defendant to rehire Plaintiff Darby retroactive to June
26, 2008, and to reinstate all employment benefits.

Case No. 8:08-CV-2421-T-17MAP

I.  Standard of Review


     Summary judgment should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law.
Fed.R.Civ.P. 56(c).


               "The plain language of Rule 56(c) mandates
               the entry of summary judgment after adequate
               time for discovery and upon motion, against a
               party who fails to make a showing sufficient
               to establish the existence of an element
               essential to that party's case, and on which
               that party will bear the burden of proof at
               trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

     The appropriate substantive law will guide the determination
of which facts are material and which facts are...irrelevant.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All
reasonable doubts about the facts and all justifiable inferences
are resolved in favor of the non-movant.  See Fitzpatrick v. City
of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is
genuine "if the evidence is such that a reasonable jury could
return a verdict for the non-moving party."  See Anderson, 477
U.S. at 248.  But, "[i]f the evidence is merely colorable...or is
not significantly probative...summary judgment may be granted."
Id. at 249-50.

Case No. 8:08-CV-2421-T-17MAP

II.  Statement of Facts

    1.  Plaintiff Patricia Darby was hired by Medco on February
11, 2003.  Plaintiff Darby was employed as a pharmacy services
representative.  Plaintiff's work in that capacity included
contacting customers who had submitted a complaint in an attempt
to resolve the complaint.

    2.  Defendant Medco operates a mail service pharmacy that
receives and fills mail order prescriptions for pharmaceutical
products.

    3.  Defendant Medco employs some employees who are members
of the United Steel, Paper & Forestry, Manufacturing, Energy,
Allied-Industrial, and Service Workers International Union and
Local 9-984.  The Collective Bargaining Agreement ("CBA") between
the Union and Medco includes an "Absence and Lateness Control
Policy and Procedure which is attached to the CBA as "Rider A."

    4.  Plaintiff Darby was not a member of the Union.  However,
Plaintiff Darby was aware of the Attendance Policy, and signed an
acknowledgment of receipt of the CBA, which included the
Attendance Policy.  (Dkt. 15-3, p. 21).  Plaintiff Darby
testified that Plaintiff Darby understood that the Attendance
Policy applied to her. (Dkt. 15-3, pp. Pp. 27-28).

    5.  The Attendance Policy emphasizes that "it is important
that all employees strive to minimize absenteeism and
lateness,... and individuals who are excessively late and/or
absent will be counseled and subject to disciplinary action as

3

Case No. 8:08-CV-2421-T-17MAP

detailed in this policy and procedure."  The Attendance Policy
(Dkt. 15-2, pp. 8-9) provides, <u>inter</u> <u>alia</u>:

"Absence prone employees are identified as
those who have five( 5) or more occurrences
per moving year based upon monthly updating.
Occurrences will be assigned when an
employee: (1) is late for the start of his or
her scheduled shift; or (2) leaves prior to
conclusion of his or her scheduled shift; or
(3) is absent on a scheduled work
day....Except for the conditions outlined
below, an absence, tardiness, or failure to
complete a scheduled shift will count as one
occurrence; however, a tardiness of less than
two hours or a failure to complete a
scheduled shift by less than two hours will
count as one-half occurrence.  An employee
who does not have any available sick leave
will receive only a single occurrence for up
to five (5) consecutive days of absence due
to sickness provided that he/she provides the
Company with verification of sickness upon
his or her return.

The following absences will be excused:
     a.  Paid time off taken in
     accordance with the terms of this
     Agreement (i.e. vacation, personal
     days, sick leave, funeral leave and
     jury duty);
     b.  Military leave as required by
     applicable law;
     c.  Approved leaves of absence
     pursuant to this Agreement;
     d.  Disciplinary suspension;
     e.  Absence due to a subpoena or
     court order to appear in court; and
     f.  Absence due to hospitalization
     or surgery (inpatient or
     outpatient) at a hospital or
     surgical center requiring local or
     general anesthetic, including
     day of surgery, the days of

4

Case No. 8:08-CV-2421-T-17MAP

> hospitalization or the recovery
> period that the employee's
> physician certifies as necessary;
> provided, that the employee uses
> his/her available paid time off in
> conjunction with such absence."

The Attendance Policy further specifies the procedure for schedule changes, and specifies the system of progressive discipline that Medco will follow:

> **"IMPLEMENTATION**
>
> The following is the system of progressive
> discipline that the Company will follow in
> administering this policy.  The policy will
> be based on a "moving year" principle.  Each
> occurrence will only stay on an employee's
> record for a 12 month period.
> >    Step 1 Five Occurrences: Verbal Warning
> >    Step 2 Six Occurrences: Written Warning
> >    Step 3 Seven Occurrences: Final Written
> >           Warning
> >    Step 4 Eight Occurrence:  Termi-
> >           nation
>
> An employee will be subject to termination if
> he/she receives three (3) written warnings in
> a twelve month period.  Employees who fail to
> work scheduled or agreed upon overtime hours
> or who have unacceptable patterns of
> absenteeism or tardiness (e.g.
> Mondays/Fridays; before/after holiday; etc.)
> will be subject to separate disciplinary
> actions....
>
> An employee may reduce his/her occurrence
> total through good attendance.  For every 60
> calendar days that an employee works without
> an occurrence, his/her occurrence total will
> be reduced by one (1), but not to less than
> zero (0), provided that the employee was
> actively at work during the 60 calendar days
> (scheduled working days) excluding vacation,

Case No. 8:08-CV-2421-T-17MAP

> personal days, sick leave and union business
> time.  The occurrence deleted will be the
> oldest occurrence then on his/her
> record....."

6.  In her deposition, Plaintiff Darby testified that Plaintiff understood that a total of eight occurrences would result in termination.  (Dkt. 15-3, p. 27).

7.  Disability Management Alternatives ("DMA") is a third party benefits coordinator who administers Defendant Medco's disability benefits policy and coordinates applications made under the Family Medical Leave Act.

8.  On April 10, 2008, Plaintiff Darby requested leave under the Family Medical Leave Act. (Dkt. 15-6, p. 3).

9.  On April 15, 2008, Defendant Medco, through DMA, instructed Plaintiff to support the FMLA request with a FMLA Certification form.   Plaintiff Darby was directed to update the FMLA Certification form to identify the frequency of the future intermittent absences. (Dkt. 15-6, p. 9).

10.  Plaintiff Darby began treatment with R. Lawrence Siegel, M.D., Ph.D. in 2006 for allergy-related symptoms. Plaintiff Darby submitted the FMLA Certification Form completed and signed by Dr. R. Lawrence Siegel.  The Form identified Plaintiff's health condition as allergic rhinitis and sinusitis. Allergic rhinitis is otherwise known as hay fever.  Sinusitis refers to an inflammation of the sinuses that occurs in association with a viral, bacterial or fungal infection, symptoms usually associated with a cold.  (Dkt. 15-7, p. 2).  The

Case No. 8:08-CV-2421-T-17MAP

Certification Form sought approval for Plaintiff Darby to attend
immunotherapy treatments one to three times per week, with each
treatment expected to last twenty minutes.  The Certification
Form requested that Plaintiff Darby be approved for future
intermittent absences of three to five days. (Dkt. 15-7, p. 6-8).

    11.  The FMLA Certification Form indicates:

> "Absence Plus Treatment: the patient's period
> of incapacity has or will exceed 3 days AND
> the patient will require more than 2 office
> visits or 1 office visit resulting in a
> regimen of continuing care.
>
> Chronic Condition: requires periodic visits
> for treatment by a health care provider;
> continues over an extended period of time and
> may cause episodic rather than a continuing
> period of incapacity."

(Dkt. 15-8, p. 6).

    12.  Plaintiff's Certification Form dated April 14, 2008
clarified that the future intermittent absences would be limited
to four times per year.  (Dkt. 15-7, pp. 10-11).

    13.  In his Affidavit (Dkt. 19-2, p. 3), Dr. Siegel states
that the intermittent leave periods were listed on an annual
basis because the intermittent absences could not reasonably be
anticipated or calculated to occur with specificity other than on
an annual basis.

    14.  On April 24, 2008, Plaintiff Darby's request for FMLA
leave was approved as follows:

Case No. 8:08-CV-2421-T-17MAP

> "Approved for travel to/from treatments 3
> times weekly, each treatment expected to last
> no more than 20 minutes.  Also approved for 4
> periods of incapacity yearly, each period
> lasting between 1 and 5 full days.

(Dkt. 15-6, p. 11).

15.  As of April 29, 2008, Plaintiff Darby had incurred a
total of five occurrences.  (Darby Deposition, p. 86 ).

16.  In her deposition, Plaintiff Darby testified that
Plaintiff was sick with sinusitis and rhinitis on April 29, April
30, May 1, May 2, May 5, May 6, May 7, May 8 and May 9, 2008.
(Dkt. 15-3, pp. 51-54).

17.  On May 12, 2008, Plaintiff Darby requested that
Plaintiff's absence from April 29, 2008 through May 2, 2008 be
excused as FMLA leave.   (Darby Deposition, Dkt. 15-2, p. 49, ll.
9-20).  Plaintiff Darby testified that Plaintiff Darby was unable
to perform her [employment] duties on April 29, 2008 (Dkt. 15-3,
p. 51, ll. 5-10) due to her chronic severe health condition (Dkt.
15-3, p. 52, ll. 10-21).  Plaintiff Darby further testified that
Plaintiff was sick for the same reason on April 30, May 1, and
May 2, 2008 (Dkt. 15-3, p. 53, ll. 2-17).

18.  On May 12, 2008, Plaintiff Darby made an additional
request to designate her absences on May 5,6,7,8, and 9, 2008 as
FMLA leave due to her chronic severe medical condition (Dkt. 15-
3, pp. 54-55, ll. 1-25, 1-2.)

19.  Plaintiff Darby testified that her FMLA leave from

8

Case No. 8:08-CV-2421-T-17MAP

April 29–May 2, 2008 was approved (Dkt. 15-3, p. 50, l. 25–p. 51, ll. 1-3), and Plaintiff's FMLA leave of May 5–May 9, 2008 was approved (Dkt. 15-3, p. 56, ll. 20-21).

20.   Plaintiff Darby received immunotherapy treatments at Dr. Siegel's office on April 30, 2008, May 3, 2008, May 6, 2008, and May 10, 2008. (Dkt. 19-1. p. 3).  The "immunotherapy treatments" were shots administered by a nurse.

21.   Plaintiff Darby's requests of 5/12/2008 for FMLA leave were referred to DMA.  DMA recognized that Plaintiff Darby's absence from 4/29/2008 through 5/9/2008 exceeded the maximum approved time of a three to five day period of absence, with a maximum of four such periods per year.  DMA contacted Dr. Siegel on May 20, 2008 and confirmed that Dr. Siegel approved Plaintiff Darby only for a maximum of three to five days per period of future incapacity.  (Dkt. 15-7, p. 3.)

22.   Dr. Siegel completed a certification form on May 30, 2008 which removed the "four times per year" limitation on the periods of three to five days of incapacity and substituted "unknown" for that limitation.  Dr. Siegel also provided Plaintiff Darby with a note which stated that Plaintiff Darby takes immunotherapy regularly, and there has been no change in Plaintiff's condition since the 2007 FMLA forms were submitted. (Dkt. 15-7, pp. 3-4, 12).

23.   DMA denied Plaintiff Darby's request to designate all of Plaintiff's absences as FMLA leave.  On 6/2/2008, DMA sent a denial letter to Plaintiff Darby which states:

9

Case No. 8:08-CV-2421-T-17MAP

> "Per your Provider, absences are not likely
> to exceed:
>
> 3-5 absences every 365 days, each absence
> lasting up to 1 full day, as well as travel
> to/from 1-3 treatments per week, each
> treatment lasting up to 20 minutes, due to
> the reason indicated on the Certification
> form.
>
> This does not mean all absences are approved.
> You may be required to furnish
> recertification if absences exceed
> expectation indicated by your Provider.  You
> will be notified if recertification is
> required.
>
> The following dates of absence have been
> approved: Absences occurring before the date
> of April 29, 2008 and absences occurring
> after the date of May 9, 2008.
>
> In addition, reported absences occurring on
> and between April 29, 2008 and May 9, 2008
> are denied.
>
> Any denied absences will be subject to the
> attendance provisions of company policy....

(Dkt. 15-6, p. 13).

24.  Plaintiff Darby appealed the denial.  On 6/7/2008,
Plaintiff Darby submitted an appeal which requests a meeting with
Plaintiff's counsel to discuss the alleged unlawful acts of Medco
and DMA.  The appeal letter further states:

> "Original certification refers to while taking
> medication and treatment.  An additional
> medical statement was furnished stating that
> patient is no longer taking prescribed
> medications due to a well known REACTION
> observed and documented as part of physician
> medical notes.  No over the counter (OTC)

Case No. 8:08-CV-2421-T-17MAP

> medications are taken.  Rph counsels that
> similar ingredients will cause the same affect
> (sic).  Prior to denial no recertification
> forms were provided.  Only form sent was a
> denial with the assumption that a voluntary
> resignation for absences that occurred in the
> months of April-May 2008.  Again, medical
> facts comply for absents (sic) during this
> period: April-May, 2008......."

(Dkt. 15-6, p. 15).


25.  On June 11, 2008, DMA denied Plaintiff Darby's appeal:


> "We have reviewed the Certification form
> completed by your Provider.  Based on the
> information and dates on the form, you have
> been certified for intermittent leave absences
> beginning April 14, 2008 for your serious
> health condition.
>
> Per your Provider, absences are not likely to
> exceed:
>
> 3-5 days every 365 days; each absence lasting
> up to 1 full day, as well as travel time
> to/from 1-3 treatments per week, each
> treatment lasting up to 20 minutes, due to the
> reason indicated on the Certification form.
>
> This does not mean all absences are approved.
> You may be required to furnish recertification
> if absences exceed the expectation indicated
> by your Provider.  You will be notified if
> recertification is required.
>
> The following dates of absence have been
> approved: Absences occurring before April 29,
> 2008 and absences occurring after the date of
> May 9, 2008.
>
> In addition, reported absences occurring on
> and between April 29, 2008 and May 9, 2008 are
> denied.

Case No. 8:08-CV-2421-T-17MAP

> Any denied absence will be subject to the
> attendance provisions of company policy.....

(Dkt. 15-6, p. 17).

26.  Plaintiff Darby appealed the denial of FMLA leave.

27.  DMA again denied Plaintiff Darby's appeal (Dkt. 15-6, p. 19).

28.  Defendant Medco alleges that Plaintiff Darby did not submit additional medical information to support a period of incapacity in excess of five days. In his affidavit, Dr. Siegel states that, in connection with the May 30, 3008 update to Plaintiff's FMLA Certification, Dr. Siegel only cleared Ms. Darby for future intermittent absences of 3-5 days.  Dr. Siegel further states that on May 20, 2008, DMA was told that Ms. Darby was not cleared by any FMLA Certification forms for absences in excess of 5 days. (Dkt. 15-8, Siegel Affidavit, pp. 2-4).

29.  In her deposition, Plaintiff Darby denied that Plaintiff understood that if her absence was not approved as an FMLA day, the absence would count as an occurrence.  (Dkt. 15-3, p. 61, ll. 13-23).

30.  In her deposition, Plaintiff Darby testified that Monica Allen and a male "HR generalist," name unknown, terminated Plaintiff's employment at a meeting.  (Dkt. 15-3, p. 63, ll. 1-20).

31.  Defendant Medco terminated Plaintiff Darby's employment on June 26, 2008.  Defendant Medco informed Plaintiff Darby that

Case No. 8:08-CV-2421-T-17MAP

Plaintiff reached eight occurrences in violation of Defendant's Attendance Policy.  Plaintiff Darby had eight consecutive absences from 4/29/2008 through 5/9/2008 and six prior occurrences.

32.   In her deposition, Monica Brewton, Plaintiff Darby's immediate supervisor, testified that Plaintiff Darby's employment was terminated because Plaintiff Darby had more than eight occurrences from April 30, 2008 forward. (Dkt. 15-4, p, 9, ll. 20-23).

33.   In his affidavit of January 11, 2010, Dr. Siegel states that a three day period of incapacity from April 30, 2008 through May 2, 2008, and a subsequent five day period of incapacity from May 5, 2008 through May 10, 2008 were within the certified FMLA leave for which Plaintiff Patricia Darby was cleared by Dr. Siegel's office. (Dkt. 19-1, p. 3, par. 4).

III.  Discussion

Defendant Medco moves for entry of summary judgment as to Plaintiff Darby's claims for violation of the Family Medical Leave Act, 29 U.S.C. Sec. 2615.  Defendant Medco argues that the undisputed facts show that Plaintiff Darby's absences exceeded the frequency allowed in the medical certification allowed by Dr. Siegel, and were therefore not protected by the FMLA.  Defendant Medco argues that during Plaintiff's appeals of the denial of her request for FMLA leave and during discovery in this case, Plaintiff produced no evidence that casts doubt on Defendant's conclusion that Plaintiff was not entitled to FMLA protection for the absences from April 29, 2008-May 9, 2008.